IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KENDRA ROSS,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**ROYALL JENKINS, et al.,**<br><br>        **Defendants.** | **Case No. 17-2547-DDC-TJJ** |
| **KENDRA ROSS,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**THE PROMISE KEEPERS, INC., et al.,**<br><br>        **Defendants.** | **Case No. 19-2091-DDC-TJJ** |

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiff Kendra Ross's Motion for Default Judgment (Doc. 208) against defendants The Promise Keepers, Inc., The Promise Keepers 417, Inc., and The Promise Keepers 417 Inc. (collectively, "The Promise Keepers")[1] for $8,055,730.64. Defendants have not appeared in this matter, though various non-parties have filed responses to plaintiff's Motion. *See* Docs. 210, 211, 215, 217, and 220. But, as those documents were filed by non-parties and non-attorneys, the court struck the filings from the record, Doc. 230, and the

---

[1] The Complaint alleges that The Promise Keepers 417 Inc. is incorporated in Maryland. The Promise Keepers 417, Inc. is incorporated in Georgia. Because a comma is the only thing distinguishing one entity from the other, the court refers to The Promise Keepers 417 Inc. as Promise Keepers Maryland, and The Promise Keepers 417, Inc. as Promise Keepers Georgia.

court thus does not consider the arguments advanced in Docs. 210, 211, 215, 217, or 220 here. Plaintiff has filed a Reply (Doc. 212). The court concludes that it cannot enter a default judgment against defendants based on the current record. This Order explains why, below.

## I.     Background

On September 15, 2017, plaintiff Kendra Ross filed a Complaint against Royall Jenkins, The Value Creators, Inc. (f/k/a The United Nation of Islam, Inc.), The Value Creators LLC, and The Value Creators, Inc. Doc. 1. The Complaint asserts 16 federal and state law claims.[2] The federal claims include violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1589, 1590, and 1595, for human trafficking and forced labor; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, for unpaid wages; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961. Three groups of claims comprise the state law claims: (1) violations of human trafficking laws; (2) violations of minimum wage laws; and (3) violations of Kansas tort and quasi-contract law. Plaintiff asserted that defendants have violated Kansas, New York, New Jersey, and Ohio human trafficking laws. Plaintiff also claimed that defendants have violated minimum wages laws for those same states. Finally, plaintiff alleged that defendants have violated Kansas laws for conversion, unjust enrichment, and both intentional and negligent infliction of emotional distress. On May 23, 2018, the court entered default judgment against defendants Royall Jenkins, The Value Creators, Inc. f/k/a The United Nation of Islam, Inc., The Value Creators LLC, and The Value Creators, Inc (the "Judgment Debtors"). *See* Doc. 41.

On February 15, 2019, the selfsame plaintiff filed a Complaint against The Promise Keepers seeking to void certain asset transfers between Judgment Debtors and The Promise

---

[2] It appears the Complaint unintentionally omitted Count VIII. Doc. 24 at 23 n.20. The claims skip from Count VII directly to Count IX.

Keepers. Compl., *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Feb. 15, 2019), ECF No. 1. The court granted plaintiff's Motion for Temporary Restraining Order. TRO, *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Feb. 15, 2019), ECF No. 8. Later, the court granted plaintiff's request for a preliminary injunction. Prelim. Inj. Order, *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Mar. 7, 2019), ECF No. 34. Plaintiff amended her Complaint on March 25, 2019. Am. Compl., *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Mar. 25, 2019), ECF No. 45. Plaintiff served The Promise Keepers on March 27, 2019. Return of Service, *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Apr. 4, 2019), ECF No. 60; Return of Service, *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Apr. 4, 2019), ECF No. 61; Return of Service, *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Apr. 4, 2019), ECF No. 62. On April 23, 2019, plaintiff filed an Application for Clerk's Entry of Default against The Promise Keepers. Doc. 194. On May 1, 2019, the Clerk entered default against The Promise Keepers under Federal Rule of Civil Procedure 55(a). Clerk's Entry of Default, *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. May 1, 2019), ECF No.68.

Plaintiff now asks the court to enter a default judgment against The Promise Keepers under Rule 55(b)(2), awarding her damages, injunctive relief, and attorneys' fees and costs.

**II.   Legal Standard**

Federal Rule of Civil Procedure 55 provides a two-step process for securing a default judgment. First, Rule 55(a) allows the Clerk to enter a default against a party who "has failed to plead or otherwise defend" a lawsuit. Second, after the Clerk enters his default, plaintiff may request the Clerk to enter judgment if the amount sought is "a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). When considering a motion for default

judgment, the court may hold a hearing if "it needs to (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

"Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016) (citations and internal quotation marks omitted). The court accepts as true all well-pleaded factual allegations in the Complaint. *Id.* This does not extend, however, to allegations about the amount of damages. *Id.*

But, even after default, "'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). When deciding whether to enter a default judgment, a district court enjoys broad discretion. *Mathiason*, 187 F. Supp. 3d at 1274.

A default judgment also does not establish the amount of damages. *Id.* at 1274–75. Instead, "[p]laintiff must establish that the amount requested is reasonable under the circumstances." *Id.* at 1275 (citing *DeMarsh v. Tornado Innovations, LP*, No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)). A court may award damages "'only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *DeMarsh*, 2009 WL 3720180, at *2 (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (further citations and internal quotation marks omitted)).

### III.     Analysis

#### A.  Subject Matter Jurisdiction

"Before it may enter default judgment, the Court has an affirmative duty to determine whether it has subject matter jurisdiction." *Olivas v. Bentwood Place Apartments, LLC*, No. 09-4035-JAR, 2010 WL 2952393, at *6 (D. Kan. July 26, 2010) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).  Here, plaintiff asserts the court has diversity jurisdiction over this matter.  Am. Compl., *Ross*, Case No. 19-2091, ECF No. 45 ¶ 27.  To invoke diversity jurisdiction, plaintiff must show the amount in controversy exceeds $75,000, and that complete diversity of citizenship exists between plaintiff and all defendants. 28 U.S.C. § 1332(a).  This requirement means plaintiff must allege that she and all defendants are "citizens of different states."  *Id.* § 1332(a)(1).  Plaintiff alleges that The Promise Keepers, Inc. is incorporated in Kansas and maintains its principal place of business in Kansas.  Am. Compl., *Ross*, Case No. 19-2091, ECF No. 45 ¶¶ 9,14.  She asserts Promise Keepers Maryland is incorporated in Maryland with its principal place of business in Kansas.  *Id.* ¶¶ 15, 21.  And, plaintiff contends that Promise Keepers Georgia is incorporated in Georgia and maintains its principal place of business in Kansas.  *Id.* ¶¶ 22, 26.  Thus, if complete diversity exists, plaintiff cannot be a citizen of Kansas, Maryland, or Georgia.

Plaintiff alleges that she lives in a safe house "to avoid detection by her former traffickers" because she fears retaliation.  *Id.* at 3 n.1.  She asserts that she lives in a state other than Kansas, Georgia, or Maryland and attaches an affidavit supporting that assertion.  *Id.*; Aff. of Kendra Ross, *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Mar. 25, 2019), ECF No. 45-23.  Plaintiff filed a Motion for Leave to Submit an *Ex Parte* Affidavit for *In Camera* Review.  Pl.'s Mot. for Leave to Submit *Ex Parte* Aff. for Confidential *In Camera*

5

Review, *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Mar. 27, 2019), ECF No. 48. Judge James granted plaintiff's motion. Order Granting Pl.'s Mot. for Leave to Submit *Ex Parte* Aff. for Confidential *In Camera* Review, *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Apr. 1, 2019), ECF No. 59. And, plaintiff submitted a confidential affidavit about her current address to the court for review. After reviewing plaintiff's affidavit *in camera*, the court finds that plaintiff's citizenship is diverse from all defendants. She does not reside in Kansas, Maryland, or Georgia. And, plaintiff seeks $8,055,730 in damages, which is more than the $75,000 threshold § 1332(a) requires. Doc. 209 at 13. Thus, plaintiff has alleged sufficient facts to establish diversity jurisdiction over this action.

### B. Personal Jurisdiction

The court also must have personal jurisdiction over a defendant before it can enter a default judgment against him. *Bixler*, 596 F.3d at 761. In a federal question case, like this one, a court can assert personal jurisdiction over a defendant if: (1) the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant; and (2) the exercise of jurisdiction comports with due process. *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (further citations omitted)).

Plaintiff asserts the court has personal jurisdiction over The Promise Keepers, Inc. because it maintains a registered office in Kansas and is incorporated under Kansas law. Am. Compl., *Ross*, Case No. 19-2091, ECF No. 45 at 6. Plaintiff also asserts the court has personal jurisdiction over Promise Keepers Maryland and Promise Keepers Georgia under the Kansas long-arm statute because both entities conduct business in Kansas, have committed tortious acts in Kansas, and own, use, or possess real property in Kansas. *Id.*

6

Kansas' long-arm statute is construed liberally to permit exercise of jurisdiction in every situation permitted by the United States Constitution. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994); *see also* Kan. Stat. Ann. § 60-308(b)(1)(L) & (b)(2). Thus, the court need not conduct a separate personal jurisdiction analysis under Kansas law because the "first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

The constitutional analysis requires a court to determine whether "exercis[ing] jurisdiction [is] in harmony with due process." *Id.* This analysis involves a two-step inquiry: (1) a defendant "must have 'minimum contacts' with the forum state, such that having to defend a lawsuit" in the forum, (2) "would not 'offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiffs can satisfy the "minimum contacts" standard in either one of two ways—by establishing general jurisdiction or specific jurisdiction based on a defendant's contacts with the forum state. *Rockwood Select Asset Fund XI(6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2014).

"General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state, and does not require that the claim [at issue] be related to those contacts." *Dudnikov*, 514 F.3d at 1078. The court may assert general jurisdiction only when the defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is "at home" in two places: its principal place of business and its state of incorporation. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).

7

Plaintiff has established that the court has general personal jurisdiction over The Promise Keepers, Inc., Promise Keepers Maryland, and Promise Keepers Georgia because each entity has, at a minimum, established Kansas as its principal place of business. And because these defendants are "at home" in Kansas, the court has general personal jurisdiction over them.

### C. Liability

Plaintiff asserts The Promise Keepers are liable for her judgment in her prior case under principles of res judicata and collateral estoppel. Doc. 209 at 8. Plaintiff also brings two alternative claims against The Promise Keepers: one for violation of the Kansas Uniform Transfer Act and other for Unjust Enrichment. *Id.* at 9–13. The court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler*, 596 F.3d at 762 (internal quotations omitted). The court considers each of plaintiff's claims, below.

#### 1. Res Judicata/Collateral Estoppel

Plaintiff first argues that The Promise Keepers are "successors in interest" to the Judgment Debtors because they are "an integrated enterprise." Doc. 209 at 8. And thus, plaintiff asserts, she is entitled to default judgment against The Promise Keepers because they are bound by principles of "*Res Judicata*/Collateral Estoppel." *Id.* In support, plaintiff cites a Ninth Circuit employment case—*NLRB v. Welcome-American Fertilizer Co.*, 443 F.2d 19 (9th Cir. 1971)— and asserts that "[w]hen two corporations function as an integrated enterprise, the [c]ourt may impose liability on one for the actions of the other" if they are dependent. Doc. 209 at 8 (citing *Welcome-American Fertilizer Co.*, 443 F.2d at 19). Plaintiff asks the court to find that The Promise Keepers and Judgment Debtors are an integrated enterprise, using the factor test articulated by the Tenth Circuit. *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1089 (10th

Cir. 1991) (noting the "employer" test under Title VII was "promulgated by the National Labor Relations Board" and includes four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."). Plaintiff contends that "Judgment Debtors and The Promise Keepers are an integrated enterprise because they function as the same entity in operation, labor, management and ownership." Doc. 209 at 9.

The problem with plaintiff's argument is that "res judicata/collateral estoppel" is not a legal claim providing the court with a basis to grant relief. Res judicata is "an affirmative defense." *Arizona v. California*, 530 U.S. 392, 394 (2000). "Collateral estoppel, also known as issue preclusion, prohibits a party from re-litigating issues that have previously been adjudicated." *Enica v. Principi*, 544 F.3d 328, 336 (1st Cir. 2008) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979)). While it is true that collateral estoppel—under the proper circumstances— may be used offensively to prevent a defendant from relitigating issues that a court already has decided, *see id.* (discussing offensive use of collateral estoppel), that isn't what plaintiff is doing here.

Instead, plaintiff's assertion of collateral estoppel stands alone. She has not moved the court for other relief that would trigger the application of collateral estoppel.[3] *See id.* at 338 (concluding that collateral estoppel didn't apply when plaintiff failed to show identity of issues).

---

[3] Plaintiff appears to invoke the "single employer test" to support her res judicata/collateral estoppel claim. She cites just one case—a case from outside our Circuit—to support her argument that the court "may impose liability on one [corporation] for the actions of the other . . . ." Doc. 209 at 8 (citing *NLRB v. Welcome-American Fertilizer Co.*, 443 F.2d 19 (9th Cir. 1971)). The single employer test arguably applies to plaintiff's labor law claims. S*ee Engelhardt v. S.P. Richards Co.*, 472 F.3d 1, 4 (1st Cir. 2006) (applying the "single employer" or "integrated employer" test to a claim under the Family Medical Leave Act). But the court has found no case where a court has applied the single employer test to enforce a *judgment* against a second entity who wasn't a party in the original case. Nor has the court found a case where the single employer test was used to hold an entity liable for RICO violations or state law claims.

So, even if collateral estoppel applies to an issue in common between an earlier lawsuit and the current one, the court is unable to grant relief based solely on a collateral estoppel theory.

In sum, plaintiff has failed to persuade the court that the "unchallenged facts constitute a legitimate cause of action . . . ." *Bixler*, 596 F.3d at 762. Thus, the court denies plaintiff's request for relief under Count 1.

### 2. The Kansas Uniform Fraudulent Transfer Act

Plaintiff's second claim for relief asserts The Promise Keepers are liable for her judgment because The Promise Keepers have violated the Kansas Uniform Fraudulent Transfer Act ("KUFTA"). Kan. Stat. Ann. §§ 33-201–33-212. Under this statute, a transfer "is fraudulent as [it applies] to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay or defraud" the creditor. *Id.* § 33-204(a)(1). To determine a party's intent,

> consideration may be given, among other factors, to whether: (1) the transfer . . . was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer . . . was disclosed or concealed; (4) before the transfer was made . . . , the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred . . . ; (9) the debtor was insolvent or became insolvent shortly after the transfer was made . . . ; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential asserts of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.* § 33-204(b)(1)–(11). If a transfer is fraudulent, KUFTA permits a plaintiff to avoid the transfer "to the extent necessary to satisfy" its claim. *McCain Foods USA, Inc. v. Cent. Processors, Inc.*, 61 P.3d 68, 75 (Kan. 2002) ("To the extent a transfer is voidable, a creditor may recover judgment for the value of the asset transferred or the amount necessary to satisfy the claim, whichever is less." (citing Kan. Stat. Ann. § 33-208(b))). The court may enter judgment "against a transferee of the asset or the person for whose benefit the transfer was made." *Id.*

10

(citing Kan. Stat. Ann. § 33-208(b)(1)).

Plaintiff contends The Promise Keepers "meet the criteria for ten out of the eleven factors enumerated in the statute." Doc. 209 at 10. "The determination of whether a creditor has proved a debtor's fraudulent intent entails a case-by-case factual examination of all relevant circumstances involving the challenged transfer or obligation." *McCain Foods USA*, 61 P.3d at 77. "When one or more [badges of fraud] is present, fraudulent intent can be inferred." *Id.*

The court finds plaintiff's allegations support a finding on seven "badges of fraud." First, the "transfer . . . was to an insider" because Judgment Debtors transferred assets to "insider" individuals who also were officers of The Promise Keepers. Kan. Stat. Ann. § 33-204(b)(1); Doc. 209 at 10; Doc. 209-4; Doc. 209-5, Doc. 209-6; Doc. 209-7; Doc. 209-8; Doc. 209-9. Second, Judgment Debtors "retained possession or control of the property transferred after the transfer." Kan. Stat. Ann. § 33-204(b)(2). Mr. Ephraim Woods, who incorporated The Promise Keepers, was also a member of entities included in Judgment Debtors. Am. Compl., *Ross*, Case No. 19-2091, ECF No. 45 ¶¶ 41–42, 62–63. And, the address for Judgment Debtors and The Promise Keepers is the same. *Id.* ¶ 67–68. Third, "the transfer or obligation was . . . concealed." Kan. Stat. Ann. § 33-204(b)(3). Neither Judgment Debtors nor The Promise Keepers notified plaintiff of the transfers. Doc. 209 at 11; Am. Compl., *Ross*, Case No. 19-2091, ECF No. ¶¶ 69–70 (describing deposition testimony that "The Promise Keepers is the 'same entity' as [Judgment Debtors], 'just with a different name'"). Fourth, plaintiff had sued Judgment Debtors "before the transfer was made." Doc. 209 at 11; Kan. Stat. Ann. § 33-204(b)(4). Fifth, the transfer consisted of substantially all Judgment Debtors' assets. Am. Compl., *Ross*, Case No. 19-2091, ECF No. 45 ¶ 81; Kan. Stat. Ann. § 33-204(b)(5). Judgment Debtors "[were] insolvent or became insolvent shortly after the transfer was made . . . ." Kan. Stat. Ann. § 33-204(b)(9); Am. Compl.,

11

*Ross*, Case No. 19-2091, ECF No. 45 ¶ 57; Doc. 209 at 11. Sixth, "the transfer occurred shortly before or shortly after a substantial debt was incurred." Kan. Stat. Ann. § 33-204(b)(10). Finally, "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred . . . ." Kan. Stat. Ann. § 33-204(b)(8). Plaintiff's exhibits show that Judgment Debtors transferred six parcels of property for "$10.00" and "other good and valuable consideration." *See, e.g.*, Ex. T, *Ross v. The Promise Keepers, Inc.*, Case No. 19-2091 (D. Kan. Mar. 25, 2019), ECF No. 45-20. Plaintiff contends that Judgment Debtors sold each property "for a sum of $10.00." Am. Compl., *Ross*, Case No. 19-2091, ECF No. 45 ¶ 115. So, the court concludes that plaintiff has shown the property was transferred for less than its market value.

Plaintiff has shown Judgment Debtors and The Promise Keepers acted with actual intent to hinder, delay, or defraud plaintiff violating the KUFTA.

### 3. Unjust Enrichment

Plaintiff next asserts she has established an unjust enrichment claim against The Promise Keepers. But plaintiff also asserts "The Promise Keepers are the successors-in-interest to Judgment Debtors' assets." Doc. 209 at 12. From this assertion, the court cannot discern the cause of action plaintiff purports to allege in her motion. Even though the court takes the facts alleged in the Amended Complaint as true for purposes of a motion for default judgment, "'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Bixler*, 596 F.3d at 762 (quoting 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). Plaintiff hasn't explained how the facts in her Amended Complaint fit either an unjust enrichment claim or a successor-in-interest claim. The court thus denies plaintiff's request for

relief on Count 3.

### D. Damages

The Promise Keepers' violation of KUFTA entitles plaintiff to recover damages. Kan. Stat. Ann. § 33-207. Plaintiff seeks "an order requiring The Promise Keepers to pay [her] an amount equal to the Judgment against Judgment Debtors—$8,055,730.62—plus interest." Doc. 209 at 13. Kansas law permits the court to void the transfers between Judgment Debtors and The Promise Keepers "to the extent necessary to satisfy [plaintiff's] claims." Kan. Stat. Ann. § 33-207(a)(1). Plaintiff "may recover judgment for the value of the asset transferred" or "the amount necessary to satisfy the creditor's claim, whichever is less." Kan. Stat. Ann. § 33-208(b). The problem with plaintiff's request is that she never alleges that the value of the transferred property exceeds the value of her judgment against Judgment Debtors. Nor does she provide the value of the property or money exchanged. The court thus cannot determine the extent to which the value of the transferred asserts might satisfy her judgment.

The court finds that the record does not adequately reflect the basis for the damage award that plaintiff seeks. A court may award damages "'only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *DeMarsh*, 2009 WL 3720180, at *2 (quoting *Adolph Coors Co.*, 777 F.2d at 1544 (further citations and internal quotation marks omitted)). Plaintiff has not established that the void transfers between Judgment Debtors and The Promise Keepers meet or exceed $8,055,730.62. Indeed, plaintiff does not allege the value of the assets that Judgment Debtors transferred to The Promise Keepers. So, the court denies plaintiff's request for monetary damages because the court lacks sufficient information to award the judgment plaintiff seeks.

Likewise, the court finds plaintiff's request for equitable relief is without adequate

support in the record. Plaintiff seeks several forms of equitable relief. This relief includes: (1) "an injunction against further disposition of property, assets, or funds by The Promise Keepers, their successors, assigns, agents or any one acting in concert with them;" (2) "an order stating that all transfers from Judgment Debtors to The Promise Keepers are fraudulent transfers and void as a matter of law;" and (3) "an order requiring The Promise Keepers to transfer all legal rights, interest and title to any of the property unjustly received from Judgment Debtors to plaintiff." Doc. 209 at 14. But plaintiff premises her request for this equitable relief on her unjust enrichment and successor-in-interest claims. The court has denied those claims. So, the court also denies plaintiff's request for equitable relief.

### IV.     Conclusion

The court finds that plaintiff has failed to plead her claims in Count 1 and Count 3 adequately. While plaintiff has pleaded an adequate claim under the KUFTA, plaintiff has failed to shoulder her burden to support her damage claim with "'detailed affidavits establishing the necessary facts.'" *DeMarsh*, 2009 WL 3720180, at *2 (quoting *Adolph Coors Co.*, 777 F.2d at 1544 (further citations and internal quotation marks omitted)). The court thus denies plaintiff's Motion for Default Judgment (Doc. 208) without prejudice to refiling.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Default Judgment (Doc. 208) is denied without prejudice to refiling.

**IT IS SO ORDERED.**

**Dated this 16th day of March, 2020, at Kansas City, Kansas.**

                                              **s/ Daniel D. Crabtree**
                                              **Daniel D. Crabtree**
                                              **United States District Judge**